UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., and TIME WARNER CABLE TEXAS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PREWITT MANAGEMENT, INC., as General Partner of WAP, Ltd., a Texas Limited Partnership, <br><br> Defendant. | Case No. 1:16-cv-1268-LY |

**PLAINTIFF'S RESPONSE TO WAP, LTD.'S MOTION FOR LEAVE TO INTERVENE AND DEFENDANT'S MOTION FOR LEAVE TO FILE A THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

TO THE HONORABLE LEE YEAKEL:

Plaintiffs Charter Communications, Inc. and Time Warner Cable Texas LLC, oppose WAP, Ltd.'s ("WAP's") Motion for Leave to Intervene (ECF 46) ("Mot. to Intervene"), and Defendant Prewitt Management, Inc.'s ("PMI's") Motion for Leave to File a Third Amended Answer, Affirmative Defenses and Counterclaims (ECF 48) ("Mot. to Amend").

## INTRODUCTION

In successive motions filed within minutes of one another, WAP and PMI ask this Court to (i) allow WAP to intervene in this case and lodge the same counterclaims as PMI, as well as a new counterclaim for rescission (Mot. to Intervene); (ii) enter summary judgment dismissing all of the claims and counterclaims filed by Plaintiffs and PMI to date (ECF 47) ("Mot. for Summary Judgment"); and (iii) allow PMI (but not WAP) to amend its answer, affirmative defenses and counterclaims to add affirmative defenses of res judicata and collateral estoppel,

-1-

-2-

and to add a counterclaim for rescission (Mot. to Amend).[1]  The movants contend this convoluted and contradictory procedure is necessary to correct a technical defect by naming WAP as a defendant.  But they ask the Court to make three left turns instead of one right.  The right turn is for the Court simply to substitute WAP for PMI under Rule 21 of the Federal Rules of Civil Procedure, which Plaintiffs do not oppose, naming the correct defendant and allowing the case to proceed without delay or prejudice to any of the parties.

A straightforward Rule 21 substitution, however, would not serve the true purpose of WAP and PMI.  Movants seek improperly to seize upon PMI's own failure to name WAP as the correct party as a pretense to amend PMI's affirmative defenses and counterclaims *six months after* the Court's August 11, 2017 deadline to do so, after already filing *three versions* of its answer, defenses, and counterclaims, and without identifying any good cause.  Any defect related to naming WAP is PMI's own doing.  PMI knew or should have known from the beginning that WAP is the proper defendant and counterclaimant because PMI is the general partner of WAP, and has managed the agreements at issue in this case for decades.  Nor can WAP credibly assert that a belated intervention and out-of-time pleading is necessary to protect its interests in this litigation.  PMI has *exclusive authority* to manage the affairs of WAP, and to make all decisions regarding the business of WAP.  In other words, WAP cannot take any action except through PMI, and PMI has at all times fully represented the interests of WAP in this litigation, repeatedly answering claims and asserting affirmative defenses and counterclaims on behalf of PMI and WAP.  Additionally, the affirmative defenses and counterclaims WAP and PMI seek to add are not "new"—they are premised on decades-old litigations and agreements about which PMI has known all along—and are meritless in any event.

---

[1] What PMI would be answering is unclear, as there would be no complaint if the Court were to grant PMI's earlier-filed Motion for Summary Judgment and dismiss Plaintiffs' claims, which it should not do.  Plaintiffs will respond to and oppose PMI's Motion for Summary Judgment within the time allowed under the Rules.

PMI is not entitled to a *fourth* bite at the apple. PMI had ample time and three opportunities before the August 11, 2017 deadline to correct any purported defect in the parties, to raise WAP's res judicata and collateral estoppel defenses, and to assert a counterclaim for rescission. It has only itself to blame for its failures. The Court should thus deny WAP and PMI's motions, and instead simply substitute WAP as a defendant pursuant to Rule 21.[2]

## BACKGROUND

Plaintiffs filed their original complaint on December 2, 2016, naming PMI as a defendant, "as general Partner of WAP, Ltd., a Texas Limited Partnership." ECF 1. PMI did not move to dismiss. Instead, on January 27, 2017, PMI filed an answer and counterclaims, admitting that it was the general partner of WAP. ECF 13, ¶ 9. PMI asserted affirmative defenses and also brought counterclaims on behalf of WAP "as General Partner of WAP, Ltd.," alleging that the right to receive franchise payments "has been assigned to WAP, Ltd., as a successor-in-interest to W.A. Prewitt, Jr." and that Plaintiffs were in breach of the agreements by failing to make payments to WAP, Ltd., and seeking a declaration that Plaintiffs must "continue paying WAP, Ltd." and "providing a quarterly accounting to WAP, Ltd." *Id.* ¶¶ 74, 76, 78 & "Defendant's Prayer." PMI did not raise res judicata or collateral estoppel as affirmative defenses, or rescission as a counterclaim. Nor did PMI raise any defect in the parties.

In March 2017, Plaintiffs filed their First Amended Complaint, now naming PMI, as General Partner of WAP, as the sole defendant. ECF 24.[3] PMI did not object to the filing of the First Amended Complaint, and said nothing about it being the wrong defendant. ECF 22. When PMI filed its answer, it again failed to raise any defect in the parties, nor did it assert res judicata and collateral estoppel defenses, or a counterclaim for rescission. ECF 26.

---

[2] Plaintiffs have attached a proposed order to this effect. Ex. D.

[3] Plaintiffs' First Amended Complaint removed members of the Public Utility Commission as defendants.

On July 31, 2017, the Court entered an Agreed Scheduling Order, establishing August 11, 2017 as the deadline to amend pleadings or join parties. ECF 32. Clearly cognizant of that deadline, on August 10, 2017, PMI filed its *Second* Amended Answer, Affirmative Defenses, and Counterclaims, once more saying nothing about any improper party, res judicata, collateral estoppel, or rescission. ECF 33.

Finally, on February 6, 2018, the parties agreed to first, negotiate proposed stipulations of fact, after which, if necessary, the parties would schedule depositions. The parties agreed that on March 16, 2018, cross motions for summary judgment were "to be filed" if necessary. Declaration of Steven Hollman, ¶ 3 (Ex. A & A-1).[4] Despite that agreement, PMI now has filed a motion for summary judgment. ECF 47.

## ARGUMENT

**1.** In its effort to intervene, WAP invokes Rule 24 of the Federal Rules of Civil Procedure, arguing that its intervention will "increase judicial efficiency." Mot. to Intervene, at 2. But WAP is mistaken, as demonstrated by the three separate motions WAP and PMI believe are necessary to accomplish this feat. By adding a new counterclaim for rescission, moreover, WAP's complaint in intervention would reset this litigation and require further pleadings (months after they closed), including at a minimum Charter's new answer and defenses, and potentially a motion to dismiss WAP's meritless new counterclaim. But there is a far more efficient mechanism for adding WAP. Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see, e.g.*, *Memon v. Allied Domecq, QSR*, 218 F.R.D. 505, 507 (S.D. Tex. 2003) (allowing substitution of proper

---

[4] Plaintiffs originally had agreed to defer any necessary summary judgment filing until March 9, 2018 at PMI's request, but PMI proposed moving that deadline to March 16, 2018, in part to allow time for further discovery, if needed, following the exchange of proposed stipulations, for each party to develop facts needed for summary judgment. Hollman Decl. ¶ 4.

defendant under Rule 21), *rev'd on other grounds,* 385 F.3d 871 (5th Cir. 2004); *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *11 (S.D.N.Y. Sept. 27, 2017) (same); *Sanders v. Collector of Internal Revenue*, No. 95-CV-105, 1996 WL 434955, at *1 (N.D. Okla. Apr. 3, 1996) (same).

Despite PMI's unverified assertions that Plaintiffs "have refused or failed to name WAP, Ltd. as a party to this litigation," Mot. to Amend ¶ 8, Plaintiffs in fact *are* willing to allow the substitution of WAP as a defendant under Rule 21.  Hollman Decl. ¶ 7.[5]  This is not good enough for PMI, however, as it improperly seeks to use this technical defect as a pretext to add untimely affirmative defenses and counterclaims. But PMI has at all times exercised its exclusive authority to act for WAP, fully asserting claims and defenses on behalf of WAP without notifying Plaintiffs or the Court of any deficiency in the parties until now.  PMI even admits as such in its motion to amend, stating that WAP "owns the claims that are *currently being asserted by [PMI] as counterclaims in the underlying litigation*."  Mot. to Amend ¶ 8 (emphasis added).  Indeed, on the same day WAP and PMI filed their motions, Plaintiffs and PMI exchanged proposed stipulations that any judgment addressing the rights of the parties to the agreements at issue will be binding on WAP, as the successor to the interests of Mr. Prewitt.  Hollman Decl. ¶¶ 9-10.

WAP's own partnership agreement (Dkt. No. 46-3) makes abundantly clear that PMI has exclusive authority to act for WAP, that no other entity (including WAP itself) can make decisions regarding the business of WAP, and that third parties such as Plaintiffs can rely conclusively on the authority of PMI to act on behalf of WAP.  Specifically, the agreement gives PMI "exclusive authority to manage the operations and affairs of [WAP] and to make all

---

[5] Plaintiffs' position is consistent with Fed. R. Civ. P. 17(a)(3), which provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  In other words, PMI could have requested leave to substitute in WAP in its affirmative defenses and counterclaims.

decisions regarding the business of [WAP]," and "the right, power, and authority to do on behalf of [WAP] all things which, in [PMI's] sole judgment are necessary, proper or desirable to carry out any of its duties and responsibilities . . . ." WAP P'ship Agmt § 15.1. It further specifies that "Persons dealing with [WAP] are entitled to rely conclusively upon the power and authority of the [PMI] as set forth in this Agreement." *Id.*[6]

In short, Plaintiffs were, and still are, entitled to rely on the power and authority of PMI to assert WAP's litigation positions and interests. And any "defect in the parties" between PMI and WAP is technical and is properly cured by changing the names on the pleadings.[7]

**2.**     PMI cannot justify its attempt to add res judicata and collateral estoppel defenses, as well as a counterclaim for rescission, ***six months*** after the deadline for doing so. PMI relies solely on Rule 15 of the Federal Rules of Civil Procedure. Mot to Amend ¶ 6. But Rule 15 "does not apply if an amendment would require the modification of a previously entered scheduling order," as here. *Filgueria v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). "Instead, Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired." *Id.* That means PMI has the burden of establishing "good cause" for its delay. *Id.* (quoting Fed. R. Civ. P. 16(b)(4)). PMI falls far short of meeting this burden.

The "most important factor" in determining good cause requires PMI to "show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline." *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017). The Court also should consider: "(1) [PMI's]

---

[6] Article XXII also confirms that each limited partner granted PMI a power of attorney and agreed to be "bound by any representations made by [PMI] pursuant to such power of attorney," and waived "any and all defenses which may be available to contest, negate or disaffirm any action of [PMI] taken under such power of attorney."

[7] This procedure would be necessary even if the Court granted WAP's Motion to Intervene, because its Complaint in Intervention does not even name itself as a party in the caption. ECF 46-1.

explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filgueria*, 734 F.3d at 422 (quotations & citations omitted).

Here, PMI has neither acknowledged, nor articulated a single, good cause justification for why it could not have asserted its proposed affirmative defenses and counterclaim before the Court's August 11, 2017 deadline expired. Nor could it: PMI's proposed res judicata and collateral estoppel defenses, and its proposed rescission counterclaim, were known to it from day one of this litigation. They are based on the 1964 and 1971 agreements at issue here (already in PMI's possession), a 1971 lawsuit (also in PMI's possession), and publicly available federal litigation from 2006 to 2012. Mot. to Amend ¶¶ 14-15, 17-18 & Ex. A (ECF 48-1), ¶¶ 72-78, 92. Therefore, PMI has not established—because it cannot—that "despite reasonable diligence, [it] could not have complied with this court's Scheduling Order." *Mandola Mgmt., Inc. v. Philadelphia Indem. Ins. Co.*, No. A-11-CV-478, 2012 WL 13033105, at *2 (W.D. Tex. Oct. 5, 2012) (Yeakel, J.) (denying motion for leave to amend when "any defense of *res judicata* or collateral estoppel . . . was available . . . well before the deadline for filing responsive pleadings"); *see also Allergan*, 2017 WL 119633, at *4-8 (denying motion for leave to amend answer and counterclaim when defendant "was aware of the facts underlying its motion at least four months before the deadline to amend its pleadings"). PMI's motion for leave to amend therefore should be denied. *See Longmire v. City of Mobile, Alabama*, No. 16-cv-0025-WS-M, 2017 WL 63022, *1-2 (S.D. Ala. Jan. 5, 2017) (denying motion to add res judicata defense six months after the deadline for amending pleadings, where defendants "had knowledge of the facts and circumstances undergirding" the defense before the litigation began).

PMI also has failed to establish the importance of its proposed amendments, because its proposed res judicata and collateral estoppel defenses, and its rescission counterclaim would be futile on their merits. *See Bombardier Aerospace Corp. v. United States*, 831 F.3d 268, 284 (5th Cir. 2016) (futility of amendment supported decision to deny motion to amend); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003) (treating "likely failure of the proposed counterclaims on the merits" as factor weighing against untimely amendment).[8]

***Affirmative Defenses.*** For its res judicata defense, PMI must be able to establish that (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a "final judgment on the merits"; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs. Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Similarly, for collateral estoppel, PMI must establish (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue has been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Wehling v. Columbia Broad. Sys.*, 721 F.2d 506, 508 (5th Cir. 1983).

Neither the 1971 state court lawsuit nor the prior federal court litigation, on which PMI rests its amended defenses, has any preclusive effect on this current litigation for multiple reasons. *First*, the 1971 lawsuit did not result in any final judgment on the merits. The parties settled their dispute, after which the court entered a stipulated order of dismissal with no discussion whatsoever of the merits. Ex. B, Order of Dismissal, at 000336-338.

*Second*, the federal litigation has no res judicata effect because neither PMI nor WAP was a party to it. *See Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 634 (5th Cir. 2012).

---

[8] Although PMI asserts that the parties will not be prejudiced by allowing its amendments (Mot. to Amend, ¶¶ 12, 17), "the absence of prejudice is insufficient on its own to establish good cause." *Mandola*, 2012 WL 13033105, at *2 (Yeakel, J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

*Third*, neither of the prior litigations presented the same facts, claims, causes of action, or issues at stake here.  In the 1971 action, W.A. Prewitt, Jr. alleged that Ameco, Inc. and its subsidiaries breached the 1964 agreement by (1) intending to sell or assign the permits or business interests to third parties; (2) failing adequately to develop cable systems in certain areas; and (3) failing to make timely payment to Mr. Prewitt.  Ex. B, Original Petition, at 000264-267.  Mr. Prewitt also alleged he had equitable title to certain cable permits for Bellmead, Beverly Hills, and Woodway.  None of these issues is at stake here.  And certainly the claims and issues in the 1971 lawsuit could not have involved Section 66.004(f) of the Texas Utilities Code, because that was not enacted until 2005.

Similarly, the plaintiffs in the prior federal litigation challenged only specific provisions of the Texas Cable Act—Sections 66.004(a) and (b)—on the grounds that they unconstitutionally excluded incumbent cable operators from statewide franchises.  *Hudson*, 667 F.3d at 642.[9]  On remand, this Court struck down only Sections 66.004(a), (b), (b-1), & (b-3), leaving the rest of the Act intact.  Final Judgment After Remand, *Tex. Cable Ass'n et al. v. Hudson*, No. 1:05cv00721, at 3-5 (W.D. Tex. May 31, 2012) (Yeakel, J.) (Ex. C).[10]  That prior litigation did not involve and never addressed Section 66.004(f).  Plaintiffs thus bring an entirely different claim here: that Section 66.004(f) imposes discriminatory and unfair obligations on Plaintiffs, not imposed on other holders of state-issued franchises.  *See* First. Am. Cmplt. ¶¶ 6, 50-55.

*Counterclaim.*  PMI's proposed counterclaim for rescission of Plaintiffs' cable systems also is meritless. All of the agreements between Mr. Prewitt and Plaintiffs' successors, including the 1965 instruments of assignments and chattel mortgages, and the 1971 agreement, only

---

[9] The plaintiffs also alleged that certain provisions conflicted with federal anti-redlining law, 47 U.S.C. § 541(a)(3).

[10] Notably, in light of the Fifth Circuit's agreeing with plaintiffs' First Amendment claim, neither that court nor this one reached plaintiffs' Equal Protection claim. *Hudson*, 667 F.3d at 642 n.19.

contemplated a reversion of the *permits*—not the cable systems. For example, in the 1971 agreement, Mr. Prewitt agreed to abandon his claim for acceleration of payments, damages for anticipatory breach, and "*reversion of permits* or foreclosure of chattel mortgages." Ex. B, Agreement, at 000342 (emphasis added). The Agreement also expressly provided that "upon the breach of any such obligations, . . . this instrument shall be of no further force or effect and *such permit shall automatically revert* to W. A. PREWITT, JR., his heirs, personal representatives, successors and assigns." *Id.* at 000345 (emphasis added).[11] Thus, even if "such" (*i.e.*, the city-issued) permits were to revert to WAP, movants would have no basis for claiming ownership of cable systems that are constructed and operated pursuant to state-issued franchises.

**3.** Even if PMI could show requisite good cause for its noncompliance with the Court's scheduling order, leave to amend its answer still would be unwarranted under Rule 15(a)(2). PMI had numerous opportunities to cure any deficiencies in the parties and amend its pleadings—but it did not do so. Its delay should not be rewarded now because "[a]t some point in time delay on the part of a [movant] can be procedurally fatal." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981); *see also Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1199 (5th Cir. 1995) (affirming denial of defendants' motion to amend answer to add res judicata defense when defendant waited until ten months after the deadline to amend).

## CONCLUSION

For all the foregoing reasons, the Court should deny WAP's and PMI's motions, and it should add or substitute in WAP as a defendant pursuant to Rule 21.

---

[11] The 1965 chattel mortgages and instruments of assignment all contained similar language. Ex. B, Chattel Mortgage to T.V. Cable, Inc. of Temple, at 000269 (providing in the event of default, the secured party will "take all steps necessary to cause the permit in question to be transferred back to the mortgagee"); *Id.*, Instrument of Assignment to TV Cable, Inc. of Temple, at 000275 ("[U]pon the breach of any such obligations by assignee, this instrument shall be of no further force or effect and such permit shall automatically revert to W. A. PREWITT, JR., his heirs, executors, administrators and assigns."); *see id.* at 000280, 000286, 000291, & 000297.

Dated: February 23, 2017			Respectfully submitted,

					By  /s/ Steven P. Hollman

						R. James George, Jr.
						GEORGE BROTHERS KINCAID & HORTON LLP
						1100 Norwood Tower
						114 W 7th Street, Suite 1100
						Austin, Texas 78701
						512.495.1410 Telephone
						E-mail:  rjgeorge@gbkh.com

						Gardner F. Gillespie (admitted *pro hac vice*)
						Steven P. Hollman (admitted *pro hac vice*)
						Abraham J. Shanedling (admitted *pro hac vice*)
						James N. Bierman, Jr. (admitted *pro hac vice*)
						SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
						2099 Pennsylvania Avenue, N.W., Suite 100
						Washington, D.C.  20006-6801
						202.747.1941 Telephone
						Email: ggillespie@sheppardmullin.com
							  shollman@sheppardmullin.com
							  ashanedling@sheppardmullin.com
							  jbierman@sheppardmullin.com

						*Counsel for Plaintiffs*
						*Charter Communications, Inc. and*
						*Time Warner Cable Texas LLC*

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing RESPONSE TO WAP, LTD.'S MOTION FOR LEAVE TO INTERVENE AND DEFENDANT'S MOTION FOR LEAVE TO FILE A THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS was delivered via electronic filing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record on this 23rd day of February, 2018.

                                          /s/ *Steven P. Hollman*
                                          Steven P. Hollman