**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**Austin Division**

| | |
|---|---|
| **CHARTER COMMUNICATIONS, INC., and TIME WARNER CABLE TEXAS LLC (n/k/a SPECTRUM GULF COAST, LLC),** ) ) ) ) | |
| **Plaintiffs/Counter-Defendants,** ) | |
| **v.** ) | **Case No. 1:16-cv-1268-RP** |
| **PREWITT MANAGEMENT, INC., as General Partner of WAP, Ltd., a Texas Limited Partnership, and WAP, LTD., a Texas Limited Partnership,** ) ) ) ) ) | |
| **Defendants/Counterclaimants.** ) | |

### PLAINTIFFS/COUNTER-DEFENDANTS' OPENING SUPPLEMENTAL BRIEF REGARDING SUBJECT MATTER JURISDICTION

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................4

      I.      The Court Properly Exercised Diversity Jurisdiction Over This Action. ...............4

              A.    Plaintiffs Were Citizens Of Delaware, Connecticut, And New York.............4

              B.    Defendants Were Citizens Of Texas And California. ....................................5

              C.    The Amount In Controversy Exceeded $75,000. ...........................................6

      II.     The Court Also Properly Exercised Federal Question Jurisdiction Over This Action.......................................................................................................................6

              A.    Charter's Declaratory Judgment Claims Arose Under Federal Law...............6

              B.    Charter's Money Damages Claim Presented Questions Of Federal Law. .................................................................................................................9

      III.    The Court Had Supplemental Jurisdiction Over Charter's State Law Claim....................................................................................................................10

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.,*
  847 F.3d 302 (5th Cir. 2017) .................................................................6

*Bank of Saipan v. CNG Fin. Corp.,*
  380 F.3d 836 (5th Cir. 2004) .................................................................9

*El Campo Ventures, LLC v. Stratton Sec., Inc.,*
  No. 1:20-CV-00560-RP, 2021 WL 1132225 (W.D. Tex. Jan. 12, 2021) ..................................3

*D'Onofrio v. Vacation Publications, Inc.,*
  888 F.3d 197 (5th Cir. 2018) ...............................................................10

*Franchise Tax Board v. Construction Laborers Vacation Trust,*
  463 U.S. 1 (1983).......................................................................6, 7, 8

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,*
  545 U.S. 308 (2005).....................................................................9, 10

*Harvey v. Grey Wolf Drilling Co.,*
  542 F.3d 1077 (5th Cir. 2008) ............................................................5, 6

*Hertz Corp. v. Friend,*
  559 U.S. 77, 80 (2010)..................................................................4, 5

*In re Deepwater Horizon,*
  934 F.3d 434 (5th Cir. 2019) ...............................................................3

*Johnson v. Affiliated Computer Servs., Inc.,*
  500 F. App'x 265 (5th Cir. 2012) ...........................................................4

*Mendoza v. Murphy,*
  532 F.3d 342 (5th Cir. 2008) ..............................................................10

*New Orleans & Gulf Coast Ry. Co. v. Barrois,*
  533 F.3d 321 (5th Cir. 2008) ...............................................................8

*Rockwell Int'l Corp. v. United States,*
  549 U.S. 457 (2007)........................................................................4

*Self-Ins. Inst. of Am., Inc. v. Korioth,*
  993 F.2d 479 (5th Cir. 1993) .............................................................7, 8

*Shaw v. Delta Air Lines, Inc.,*
  463 U.S. 85 (1983)........................................................................7, 8

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950)................................................................................................7, 8

*Spectrum Gulf Coast LLC v. City Pub. Serv. of San Antonio*,
    No. 5:22-cv-94-DAE (W.D. Tex. Feb. 3, 2022) ......................................................3

*SXSW, L.L.C. v. Fed. Ins. Co.*,
    No. 22-50933, 2024 WL 1216560 (5th Cir. Mar. 21, 2024).................................5, 6

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)..............................................................................................10

*Villamil v. Fayrustin*,
    No. EP-23-CV-00428-DCG, 2024 WL 1664791 (W.D. Tex. Apr. 17, 2024).......................5, 6

## **Statutes**

28 U.S.C. § 1332.....................................................................................................4, 6

28 U.S.C. § 1367(a) ...................................................................................................10

47 U.S.C. § 556(c) .....................................................................................................10

Tex. Util. Code § 66.004(f)..............................................................................1, 2, 3, 7, 9

**INTRODUCTION**

After correctly ruling in favor of Charter Communications, Inc. ("CCI"), and Time Warner Cable Texas LLC ("TWC," collectively, "Charter" or "Plaintiffs") following more than six years of litigation, the Court is now called on to address a limited, procedural remand to confirm what has been the case since Charter filed its operative Complaint: That the Court properly exercised subject matter jurisdiction over this action.

As an initial matter, under well-established law, the Court properly exercised diversity jurisdiction over this action. When Plaintiffs filed their Second Amended Complaint ("SAC") in 2018, they were citizens of Delaware, New York, and Connecticut, and Defendants were citizens of Texas and California. The record, as well as Charter's allegations, established that complete diversity exists, and the amount in controversy far exceeded $75,000. On this basis alone, the Court properly exercised jurisdiction, and should confirm as much now.

While the Court need go no further, the Court had federal question jurisdiction over this action as well. Charter's Complaint expressly sought affirmative declaratory relief that federal law preempted Defendants' application of Tex. Util. Code § 66.004(f) ("Texas Cable Act"). Ruling on Charter's affirmative claims – and Defendants' counterclaims to enforce their purported payment rights – necessarily required the Court to address substantial federal issues as the parties and Court recognized. Charter's money damages claim also presented federal issues for the Court to resolve, including whether applying the Texas Cable Act to extend Charter's payment obligations in perpetuity violated Charter's rights under the Federal Contracts Clause, First Amendment, Equal Protection Clause, and/ or Federal Cable Act. And because the Court had both diversity and federal question jurisdiction, it properly exercised supplemental jurisdiction over the parties' state law claims, which arose from the same nucleus of facts as Charter's federal claims.

-1-

Accordingly, the Court should hold it properly had – and still has – subject matter jurisdiction so that this long-running litigation may finally come to a close.

## BACKGROUND

In 2018, Charter filed its SAC, alleging that Charter's predecessor, Ameco, Inc. ("Ameco"), entered two agreements (the "Prewitt Agreements") with Defendants' predecessor, W.A. Prewitt, Jr. ("Mr. Prewitt"). Dkt. 72. Under the Prewitt Agreements, Ameco acquired city cable permits in Texas cities that Mr. Prewitt held in exchange for payment of three percent of gross revenues from operating the cable systems for the life of the permits. *Id.* ¶ 13. Years later, Charter and its predecessors took on these payment obligations in exchange for use of the permits, paying Mr. Prewitt and his successors millions of dollars. *Id.* ¶ 24. In 2005, the Texas Cable Act took effect, which terminated Charter's payment obligations and replaced the city permits with state issued certificates of franchise authority. *Id.* ¶¶ 27-29. Nevertheless, Defendants asserted that Charter remained bound by its payment obligations under the terminated city cable permits. *Id.* ¶ 24.

Charter then filed this lawsuit, asserting five affirmative claims for declaratory relief and one claim for money had and received, all of which presented federal claims and issues. *Id.* ¶ 32. For its declaratory judgment claims, Charter sought affirmative declarations that applying the Texas Cable Act to extend its payment obligations for the terminated city permits violated its rights under federal law. *Id.* ¶¶ 45-61. Charter specifically sought declarations that Defendants' interpretation and application of the Texas Cable Act violated, and were therefore preempted by, the Federal Cable Act's mandatory, five-percent gross revenues cap on franchise fees, and further violated Charter's rights under the First Amendment, Equal Protection Clause, and Federal Contracts Clause by discriminating against Charter and perpetuating its payment obligations. *See*

-2-

*id.* And in its money had and received claim, Charter alleged it had to pay Defendants over $12 million they were not entitled to under Texas and federal laws. *Id.* ¶ 63.

Charter further alleged that the Court had subject matter jurisdiction based on diversity jurisdiction. At the time of filing the SAC, CCI was a corporation formed under the laws of Delaware with its principal place of business in Connecticut. Decl. of J. Smith ¶¶ 4-5 (attached as Exhibit ("Ex.") A); Dkt. 96 ¶ 3; Dkt.136-4; Dkt. 136-5. And TWC was a limited liability company that had members ultimately traceable to three entities incorporated and with their principal places of business in Connecticut, New York, and Delaware. Ex. A ¶ 6; Dkt. 72 ¶ 8; Dkt. 96 ¶ 4; Ex. B (*Spectrum Gulf Coast LLC v. City Pub. Serv. of San Antonio*, No. 5:22-cv-94-DAE (W.D. Tex. Feb. 3, 2022), Dkt. 1-1)[1]; *see* Ex. C.

Defendant Prewitt Management, Inc. ("PMI"), was a corporation formed and with its principal place of business in Texas. *See* Dkt. 72 ¶ 9; Dkt. 96 ¶ 6; Dkt. 136-14 at 160-64, 202-06. Charter further alleged that Defendant WAP, Ltd. ("WAP") was a partnership whose partners were PMI as well as certain natural persons domiciled in Texas and California. Dkt. 72 ¶ 9; Dkt. 96 ¶ 7 (joint stipulation that WAP's partners reside in Texas and California); Dkt. 136-14 at 167-68. Charter also alleged that the amount in controversy exceeded "$12 million." Dkt. 72 ¶¶ 2 & 63.

Charter extensively briefed and argued its federal claims before, during, and after trial. Dkt. 72; Dkt. 98; Dkt. 100; Dkt. 139 at 19-21 (Charter arguing at trial the Texas Cable Act "runs afoul" and "violate[s]" its rights under federal law). No party challenged the Court's jurisdiction on any basis and it proceeded through motions practice, full discovery, and trial. And then, years

---

[1] The Court may properly, and should, take judicial notice of this jurisdictional information from other dockets. *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019); *El Campo Ventures, LLC v. Stratton Sec., Inc.*, No. 1:20-CV-00560-RP, 2021 WL 1132225, at *2 n.5 (W.D. Tex. Jan. 12, 2021); Fed. R. Evid. 201(b).

after trial, the Court ruled in Charter's favor, holding that, "under the Agreements," Charter's payment obligations ended when it replaced the prior city permits with the new permits required by the Texas Cable Act. Dkt. 152. In so ruling, the Court implicitly found it had jurisdiction based on the parties' factual stipulations, but did not analyze the issue explicitly as no party contested the Court's authority to rule on the merits.

Defendants appealed the Court's ruling. Dkt. 155. On appeal, the Fifth Circuit remanded for this Court to "determine whether diversity jurisdiction exists." Dkt. 165. On remand, the Court ordered supplemental briefing on diversity and federal question jurisdiction. Dkt. 166.

## <u>ARGUMENT</u>

**I.     The Court Properly Exercised Diversity Jurisdiction Over This Action.**

**A.     Plaintiffs Were Citizens Of Delaware, Connecticut, And New York.**

The record confirms the parties were completely diverse when Charter filed its SAC. Under familiar standards, diversity jurisdiction exists where there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. And where, as here, a plaintiff amends its complaint, the Court must rely on the "amended complaint" at the time of filing "to determine jurisdiction." *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007); *Johnson v. Affiliated Computer Servs., Inc.*, 500 F. App'x 265, 266 (5th Cir. 2012).

Here, when Charter filed its SAC, CCI was a corporation formed under the laws of Delaware with its principal place of business in Connecticut. Ex. A ¶¶ 4-5; Dkt. 96 ¶ 3; Dkt.136-4; Dkt. 136-5. As a corporation, CCI is a citizen of the state in which it is incorporated and has its principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Accordingly, CCI is a citizen of Delaware and Connecticut for diversity jurisdiction purposes. *See id.* 80.

As for TWC (n/k/a Spectrum Gulf Coast, LLC), as of the time of the SAC, it was a citizen of Connecticut, New York, and Delaware. That is so because, for purposes of diversity

-4-

jurisdiction, a limited liability company takes on the citizenship of each of its members.  *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  When Charter filed the SAC, TWC had members ultimately traceable to three incorporated entities that were citizens of Connecticut, New York, and Delaware,  Ex. A ¶ 6; Ex. B; Ex. C, and consequently, it was a citizen of those states.  *See Harvey*, 542 F.3d at 1080.

### B.   Defendants Were Citizens Of Texas And California.

Defendants were completely diverse from Charter at the time of the SAC.  When Charter filed its SAC, PMI was a corporation formed in Texas with its principal place of business there.  *See* Dkt. 96 ¶ 6; Dkt. 136-14 at 160-64, 202-06; Ex. D (publicly available at Texas Comptroller of Public Accounts, Glenn Hegar, https://mycpa.cpa.state.tx.us/coa/coaSearchBtn#).  Accordingly, PMI was (and still is) a citizen of Texas.  *See SXSW, L.L.C. v. Fed. Ins.*, No. 22-50933, 2024 WL 1216560, at *2 (5th Cir. Mar. 21, 2024); *Hertz*, 559 U.S. at 80.

WAP, as a partnership, takes on the citizenship of each of its partners.  *See Harvey*, 542 F.3d at 1079.  When Charter filed the SAC, WAP's partners were PMI – a citizen of Texas – as well as certain natural persons acting individually and as trustees of the Prewitt family trusts.[2]  Dkt. 136-14 at 167-68.  The natural persons acting as partners of WAP had citizenship where they were domiciled.  *See Villamil v. Fayrustin*, No. EP-23-CV-00428-DCG, 2024 WL 1664791, at *3 (W.D.

---

[2]  In their Supplemental Filing Regarding Jurisdiction (Dkt. 169), Defendants assert that the Prewitt family trusts – rather than the trustees of those trusts – are partners of WAP.  *See* Dkt. 169 at 8. That claim conflicts with record evidence showing that the Prewitt trustees – not the trusts themselves – are WAP's partners.  *See* Dkt. 136-14 at 167-68.  Defendants admit that, if the trusts are WAP's partners, "it is not entirely clear which rule applies here."  *See* Dkt. 169 at 8.  But even assuming – without conceding – that the Court should look to the citizenship of the beneficiaries of the Prewitt trusts, complete diversity still exists here, as Defendants readily admit.  *See id.* at 10.  That is because when Charter filed the SAC, Plaintiffs were citizens of Delaware, Connecticut, and New York.  And even considering the beneficiaries of the Prewitt trusts – Defendants were citizens of Texas, California, Washington, Arkansas, and Arizona.  *See id.*

Tex. Apr. 17, 2024) (explaining citizenship of a natural person "is her state of domicile"); *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 302, 306-07 (5th Cir. 2017) (determining the citizenship of an LLC based on the domicile of its members acting as trustees).  When Charter filed the SAC, those persons were domiciled in and citizens of Texas and California.  *See* Dkt. 96 ¶ 7; Dkt. 136-14 at 167-68; *Villamil*, 2024 WL 1664791, at *3.  As such, WAP is a citizen of Texas and California.  *See Harvey*, 542 F.3d at 1079.

Based on the record evidence, the parties were completely diverse at the time Charter filed its SAC.  *See SXSW*, 2024 WL 1216560, at *2.[3]

### C.    The Amount In Controversy Exceeded $75,000.

Moreover, the amount in controversy in this matter far exceeded $75,000 at the time of the SAC.  Dkt. 96 ¶¶ 22, 41 & 56; Dkt. 96-1.  As alleged in the SAC, Charter suffered money damages "exceeding $12 million."  Dkt. 72 ¶ 63.  Thus, the Court properly exercised – and may continue to exercise – diversity jurisdiction over this matter.  *See* 28 U.S.C. § 1332.

## II.    The Court Also Properly Exercised Federal Question Jurisdiction Over This Action.

### A.    Charter's Declaratory Judgment Claims Arose Under Federal Law.

In addition to diversity jurisdiction, the Court also had federal question jurisdiction because Charter's declaratory judgment claims arose under federal law.  As the U.S. Supreme Court and Fifth Circuit have made clear, a federal court should exercise federal question jurisdiction over a declaratory judgment claim if a coercive action by the declaratory judgment defendant to enforce its rights would necessarily present a federal question.  *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 19 (1983).  Thus, a plaintiff who brings a declaratory action

---

[3]  For the avoidance of doubt, Charter intends to file a motion for leave to amend its SAC to further clarify the citizenship of the parties for diversity jurisdiction purposes.

"affirmatively" to determine "whether a state law is preempted presents a valid basis for federal question jurisdiction." *Self-Ins. Inst. of Am., Inc. v. Korioth*, 993 F.2d 479, 483 (5th Cir. 1993); *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983) (holding federal jurisdiction existed over suit by employers claiming duties they owed under state law had been preempted by ERISA). That is the case here.

The Court had federal question jurisdiction based on Charter's declaratory judgment claims. Any action brought by Defendants to enforce their purported payment rights under the Prewitt Agreements would raise questions about the constitutionality of the Texas Cable Act in light of conflicting federal law. Dkt. 72 ¶¶ 45-61. That is so because Charter sought affirmative declarations that Section 66.004(f) of the Texas Cable Act "violate[d]" Charter's rights under the "Federal Cable Act . . . First Amendment . . . Equal Protection Clause . . . and Federal Contracts Clause." *Id.* Consequently, those claims presented a "valid basis" for the Court to exercise federal question jurisdiction here. *Korioth*, 993 F.2d at 483; *Shaw*, 463 U.S. at 96 n.14.

The U.S. Supreme Court's holdings in *Franchise Tax Board* and *Skelly Oil* do not call into question this Court's jurisdiction and are readily distinguishable. In *Franchise Tax Board*, the Court lacked jurisdiction because the plaintiffs sought only a defensive declaration that state law was *not* preempted in anticipation of the defendants' potential argument to the contrary. 463 U.S. at 22. In *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), the parties had a contract under which petitioner had the right to terminate if a third party failed to secure a certificate of public convenience and necessity from the Federal Power Commission by a specific date. *Id.* at 669. After petitioner terminated the contract, respondent sought a defensive declaration that the contract was still in effect and enforceable because a certificate "within the meaning of the Natural Gas Act" had been issued. *Id.* at 670. The Court held that federal question jurisdiction did not

exist based on the mere possibility that petitioner's defense might implicate federal law – *i.e.*, that petitioner might argue that termination was lawful because a certificate under the Natural Gas Act had not been issued.  *Id.* at 670-71.

Here, Charter's declaratory judgment claims sought *affirmative* declarations that federal law preempted Texas law.  Dkt. 72 ¶¶ 45-61.  Unlike in *Skelly* and *Franchise Tax Board*, where "there was no federal jurisdiction" because federal law "was implicated only as a defense to the principal [state law] claim," Charter's claims presented multiple "federal question[s] on [their] face."  *Korioth*, 993 F.2d at 483 n.7; *Franchise Tax Board*, 463 U.S. at 22; *Skelly Oil*, 339 U.S. at 670-71.  And as the U.S. Supreme Court even recognized in *Franchise Tax Board*, "[p]arties subject to conflicting state and regulatory schemes" undoubtedly have a "clear interest in sorting out the scope of each government's authority" when they "face a threat of liability if the application of federal law is not quickly made clear."  *Franchise Tax Board*, 463 U.S. at 21 n. 23.  Because Charter's claims presented federal issues on their "face" that presented serious conflicts between the federal and Texas cable regulation regimes that needed to be sorted out and did not merely arise as anticipated defenses, the Court had federal question jurisdiction.  *See Korioth*, 993 F.2d at 483 n.7.[4]

---

[4]  The Fifth Circuit has clarified that the principle articulated in *Shaw* – that a plaintiff who seeks declaratory or injunctive relief on preemption grounds necessarily presents a federal question – does not apply to suits exclusively between private parties.  *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008).  However, *Barrois* is properly distinguished from this case.  Unlike Charter's claims, the preemption claim in *Barrois* arose only "as an anticipated or federal defense."  *Id. Barrois* did not hold that a declaratory judgment claim seeking an affirmative declaration that state law is preempted can *never* serve as a basis for federal question jurisdiction.  That would indeed conflict with the *Korioth* court's express holding that such claims "present[ ] a valid basis for federal question jurisdiction."  *Korioth*, 993 F.2d at 483.

### B.    Charter's Money Damages Claim Presented Questions Of Federal Law.

The Court also had federal question jurisdiction because Charter's money damages claim involved necessary questions of federal law.  The Court may properly exercise federal question jurisdiction over a state law claim with an embedded question of federal law that is necessarily raised, disputed between the parties, substantial to the federal system, and capable of resolution without disturbing the balance of federal and state judicial responsibilities.  *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  A federal issue is "substantial to the federal system" when it involves an "important issue of federal law" that the federal government has a "strong interest" in resolving, *id.* at 315, while a federal issue is capable of resolution when hearing it will not materially affect the "division of labor" between the federal and state judiciaries.  *Id.*  Applying this standard here, Charter's state law claim gave rise to federal jurisdiction because it presented "serious federal interest[s]" that are properly resolved in a "federal forum."  *Id.* at 313.

Charter's money damages claim affirmatively presented a number of embedded federal questions.  Under that claim, Charter sought a ruling whether Section 66.004(f) of the Texas Cable Act violated Charter's rights under the Federal Cable Act, the First Amendment, the Equal Protection Clause, and/ or the Contracts Clause.  Dkt. 72 ¶¶ 45-61.  Those issues necessarily were raised because, if the Court rejected Defendants' interpretation of Section 66.004(f) and instead determined that Section 66.004(f) violated Charter's rights, then principles of "equity, justice, and law" dictated that Charter should be entitled to a refund from Defendants for the franchise fees it paid.  *Bank of Saipan*, 380 F.3d at 840.  Indeed, in its pleadings and at trial, Charter specifically alleged and fully presented these federal issues to the Court.  Dkt. 72; Dkt. 98 & 100.

The federal questions raised in Charter's money damages claim are also substantial to the federal system.  *See Grable*, 545 U.S. at 314-15.  The Federal Cable Act preempts and supersedes

any contrary state cable legislation.  47 U.S.C. § 556(c).  By declaring the primacy of the Federal

Cable Act over any conflicting state law, the government has unambiguously expressed its "strong

interest" in enforcing federal telecommunications law over conflicting state cable regulatory

schemes.  *Grable*, 545 U.S. at 315.  And because actions for money damages rarely raise a

contested matter of federal law, exercising federal question jurisdiction here will result in little

more than a "microscopic effect on the federal-state division of labor."  *Id.*

### III.    The Court Had Supplemental Jurisdiction Over Charter's State Law Claim.

Because the Court had subject matter jurisdiction, it could properly exercise supplemental

jurisdiction over Charter's state law claim.  A federal court may exercise supplemental jurisdiction

over state law claims that "form part of the same case or controversy" as claims within the court's

original jurisdiction, 28 U.S.C. § 1367(a); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 206

(5th Cir. 2018), meaning they "derive from a common nucleus of operative fact," *id.*; *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Here, Charter's claims all related to the

parties' rights under the Prewitt Agreements and violations of federal law.  Dkt.72 ¶¶ 62-63;

Dkt.76 at 29-41; Dkt. 77 at 30-32; Dkt. 131; *D'Onofrio*, 888 F.3d at 206-07.  Thus, Charter would

"be expected to try them all in one judicial proceeding," particularly given "federal courts" are

"appropriate bodies for the application" of preemption principles.  *Gibbs*, 383 U.S. at 725 & 729.[5]

**CONCLUSION**

The Court should hold that it properly had – and still has – subject matter jurisdiction over

this action that the Court ruled on the merits of long after trial.

---

[5]  That the Court ultimately ruled on narrower state law grounds in Charter's favor does not
somehow deprive it of federal or supplemental jurisdiction.  *See Gibbs*, 383 U.S. at 728; *Mendoza
v. Murphy*, 532 F.3d 342, 346-47 (5th Cir. 2008).

Dated:  August 12, 2024          Respectfully submitted,

By   /s/ *Paul Werner*
_____

      Paul Werner
      Abraham J. Shanedling
      Steven P. Hollman (admitted *pro hac vice*)
      SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
      2099 Pennsylvania Avenue, N.W., Suite 100
      Washington, D.C. 20006-6801
      202.747.1941 Telephone
      pwerner@sheppardmullin.com
      ashanedling@sheppardmullin.com
      shollman@sheppardmullin.com

      D. Douglas Brothers (State Bar No. 03084500)
      GEORGE, BROTHERS, KINCAID & HORTON LLP
      114 W 7th Street, Suite 625
      Austin, Texas 78701
      512.495.1446 Telephone
      dbrothers@gbkh.com

      *Counsel for Plaintiffs/Counter-Defendants*
      *Charter Communications, Inc. and*
      *Time Warner Cable Texas LLC*
      *(n/k/a Spectrum Gulf Coast, LLC)*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 12, 2024, I caused the foregoing to be served on all record counsel via the Court's CM/ECF system.

*/s/ Paul Werner*
Paul Werner